**Dorothy HOOTS, et al., Plaintiffs,**

**v.**

**COMMONWEALTH OF PENNSYLVA-NIA et al., Defendants.**

**Civ. A. No. 71–538.**

United States District Court,
W. D. Pennsylvania.

March 31, 1982.

Thomas J. Henderson, Pittsburgh, Pa., for plaintiff.

Thomas M. Rutter, Pittsburgh, Pa., for Gateway and West Mifflin.

Carl W. Brueck, Pittsburgh, Pa., for Edgewood.

J. Robert Maxwell, Pittsburgh, Pa., for Churchill.

G. N. Evashavik, Pittsburgh, Pa., for Turtle Creek.

John J. Hickton, Pittsburgh, Pa., for Swissvale.

Anton Bigman, Pittsburgh, Pa., for General Braddock.

Allen C. Warshaw, Deputy Atty. Gen., Harrisburg, Pa., for Com. of Pa.

## OPINION

WEBER, Chief Judge.

■ This aspect of the continuing school desegregation case involves the action of the former Edgewood and Churchill school boards which purported to rebate surplus tax monies to the taxpayers of their respective districts. This court entered a temporary restraining order on July 6, 1981 and extended the order to a preliminary injunction after hearings held on July 14, 1981. The court must now determine whether a permanent injunction should be entered in this matter.

On April 28, 1981, as a remedy to a finding of segregation, this court entered an order merging five school districts into one. Edgewood, Churchill, Turtle Creek, Swissvale and General Braddock are the former separate school districts which became part of the New School District (now known as Woodland Hills). Pursuant to the order of April 28, 1981, the five former school districts ceased to exist as separate districts and were merged into a single new district. As of the same date, all provisions of the Public School Code of 1949, Act of March 10, 1949 (P.L.30), applied to the New School District. The governing body of the New School District was given the power and duty to adopt a budget and levy taxes for its operation, from and after the date of its creation by May 15, 1981. The former component school districts were to continue under the governance of their respective directors until the end of the school year, June 30, 1981. All operating expenses of the former districts continued to be obligations of each school district until June 30, 1981.

At the end of the fiscal year, June 30, 1981, two of the former school districts, Edgewood and Churchill, had unencumbered excess funds remaining in their budget. On the evening of June 30, 1981, as the last act before their dissolution, the boards of these two school districts passed resolutions to transfer any excess funds to special accounts from which "rebates" would be made to the taxpayers of those districts. The testimony showed that this action was taken specifically to keep said funds from becoming the property of the New School District.

Simultaneously, Senate Bill 168 was passed and signed by the Governor on the same date, shortly before its expiration at midnight, June 30, 1981. This bill was originally an amendment to a section of the School Code relating to employment. The bill was amended on June 30 to include a provision which permitted school districts with excess operating funds to rebate those excesses to their taxpayers. Edgewood and Churchill have claimed their resolutions to make a rebate of excess funds was proper under Senate Bill 168, Act 45, 24 P.S. § 6–687(e) and under prevailing law at that time.

Plaintiffs in this action argue that these excess funds were the property of the New School District and the eleventh hour resolutions to rebate this money to the former district taxpayers was in violation of this court's consolidation order of April 28, 1981 and state law. We agree.

Edgewood and Churchill argue that such tax rebates are proper on three alternative grounds. First they argue that these actions were consistent with this court's order of April 28, 1981. Second, they allege that, even if inconsistent with the order, they

had the authority to make such a rebate pursuant to the specific grant of Act 45. Finally, they argue that, regardless of Act 45, they had the power to make rebates pursuant to previously established state law.

As to the first issue, we find that such a tax rebate would not be consistent with the order of April 28. As of that date, the former component school districts ceased to exist and the New School District had all the powers conferred on such a unit by state law. The former districts remained obligated for all expenses incurred for the fiscal year ending June 30 and the directors of the former districts were to continue in the governance of their districts until that date. Edgewood and Churchill contend that they had the power to make the rebate under the continuing governance provision. They also argue that because these tax monies had been levied for the 1980–81 school year, they are akin to an obligation incurred by the former district. Therefore, as an obligation, it should remain with the former districts.

■ There is no logical basis for considering an unencumbered surplus an incurred obligation of the former school districts. Any surplus normally is carried over into the next fiscal year and is properly considered an asset. In fact, this had been the established practice of both Edgewood and Churchill in prior years in which a surplus existed.

Although the order of April 28 provided for continued governance of the former school districts, it also made the New School District, as well as the former districts, subject to all the provisions of the Public School Code. One of those provisions applies specifically to property of former school districts upon a reorganization, 24 P.S. § 2–298(a).

§ 2–298. Property and indebtedness and rental obligations of former school districts.

(a) Except as otherwise provided in this section, all real and personal property, indebtedness and rental obligations to an approved school building authority or non-profit corporation, if any, of former school districts composing any school district constituted and deemed established pursuant to this subdivision (i) shall become the property, indebtedness and rental obligations of such newly established school district. All rights of creditors against any of the component former school districts shall be preserved against the newly established school district. All property theretofore vested in the component former school districts shall become vested in the newly established school district, and all debts and taxes owing to the component former school districts, uncollected in the several component former school districts, *and all moneys in the treasuries of the component former school districts, shall be paid to the treasurer of the newly established school district.* (emphasis added).

Under the terms of this provision, made applicable to the New School District by the April 28 order, Edgewood and Churchill were required to retain the surplus funds in their treasuries and pay them to the treasurer of the New School District. In fact, two other districts, Swissvale and Turtle Creek, had been in the process of selling unused school buildings at the time the court ordered the merger. The proceeds of these sales were turned over to the New School District according to this provision. Therefore, we find that the proposed tax rebates violated both the spirit and the letter of this court's order.

■ Upon finding that the tax rebate is inconsistent with this court's order, we turn to the second issue: whether Act 45 gave Edgewood and Churchill the authority to make such a rebate. The court notes that the testimony revealed some serious irregularities in the passage of Act 45. However, the validity of this legislation is irrelevant to the question before this court. Even if valid and proper under normal circumstances, this court can enjoin its application in this instance. The district court may enjoin a state or school board action which hinders or impedes the effectiveness of a remedy ordered to vindicate constitu-

tional deprivations. *United States v. Scotland Neck City Board of Education*, 407 U.S. 484, 92 S.Ct. 2214, 33 L.Ed.2d 75 (1972); *North Carolina Board of Education v. Swann*, 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586 (1971); see also *Griffin v. County School Board of Prince Edward County*, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). Because we find that the proposed tax rebates were approved by Edgewood and Churchill with the purpose of withholding those funds from the New School District, Act 45 cannot be enforced in the face of the merger ordered by this court.

Finally, Edgewood and Churchill argue that, apart from Act 45, they had the power and duty to make such a rebate under previously established state law.

■ First, Churchill points out that decisions of school boards carry a presumption that they are rested upon considerations of public welfare and have been reached by the exercise of good judgment. *Kahl v. Carroll Township School District*, 35 Wash.Co. [Pa.] 141 (1954); citing *Lamb v. Redding*, 234 Pa. 481, 83 A. 362 (1912). The testimony showed, however, that this rebate was made for the purpose of withholding these excess funds from the New School District, the creation of which they opposed, and continued to oppose by appeals and other tactics. This court specifically allowed the appropriation of moneys to finance future appeals. Because such a purpose, even absent any bad faith, violates the merger order, as we have already shown, any presumption of validity that these rebate resolutions may have enjoyed is overcome.

■ Second, Churchill outlines the law applicable in cases involving injunctions of tax levies which are "clearly in excess of the sum required for the purpose." Excessive tax levies are without authority of law and can be enjoined by the state. *Ritzman v. Coal Township School Directors*, 317 Pa. 271, 176 A. 447 (1935); *Orleans Appeal*, 11 D&C 2d 193 (1957). Churchill argues that if excessive tax levies can be enjoined then it follows that an excessive tax levy already

collected should be rebated. Although this may be a correct statement of the law, we find this argument by Churchill somewhat odd. There was never any action brought by any taxpayer alleging an excessive tax levy, and so this court has no basis on which to declare Churchill's 1980 tax levy improperly excessive. Furthermore, Churchill normally levied taxes in excess of actual expenditures in that they usually had a carry over which they used as their starting point for budget planning. Finally, we find it anomalous that Churchill would accuse itself of a prior unlawful act to justify a subsequent improper action.

Edgewood specifically argues that their surplus resulted from the fact that Edgewood had budgeted renovations for the athletic field and fieldhouse. Because of the developments in this case, and the uncertainty of the use of their facilities in the future, these renovations were not made. Edgewood contends that since these monies were not spent for the purpose for which they were budgeted, they should be returned. The usual practice, however, was that unspent funds were carried over into the next fiscal year, no matter how the surplus was created. The failure to spend these funds due to the uncertainty of future needs may well have been the responsible choice. But this does not justify their decision to deviate from their normal procedure of carrying over excess funds. Edgewood's motive for making a tax rebate in this instance was to avoid having these funds become the property of the New School District and thus violates the merger order.

■ Finally, whatever arguments are raised that these two districts had the legal authority to make rebate under state law is overcome by the specific statute cited earlier in the opinion. The state law regarding property of component school districts in cases of reorganization is that monies in the treasury of the component districts become the property of the merged district. 24 P.S. § 2–298(a).

Based on the foregoing, we find that the proposed tax rebates by Edgewood and

Churchill would violate this court's consolidation order of April 28, 1981, as well as state law and, therefore, a permanent injunction shall issue.